FILED

09 FEB 11 PM 2:04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. **'09 MJ 0445** |
|---|---|
| Plaintiff, | ) <u>C O M P L A I N T</u> |
| v. | ) Title 21, U.S.C., Secs. 846 and |
| ANGEL LUEVANO (1), | ) 841(a)(1) - Conspiracy to |
| ROSARIO ASTORGA-ESPINOZA (2), | ) Distribute Controlled Substances |
| JOSE ASTORGA-ESPINOZA (3), | ) |
| Defendants. | ) |

The undersigned complaint being duly sworn:

<u>Count 1</u>

Beginning at a date unknown to the grand jury and continuing up to and including February 10, 2009, within the Southern District of California, and elsewhere, defendants ANGEL LUEVANO, ROSARIO ASTORGA-ESPINOZA, and JOSE ASTORGA-ESPINOZA did knowingly and intentionally conspire together and with other persons known and unknown to the grand jury to distribute controlled substances, to wit: **approximately 1569.2 grams of Oxycodone (Schedule II), approximately 80,880 units of Ritalin (Methylphenidate)(Schedule II), approximately 355.98 grams of Hydrocodone(Schedule III),**

///

1
2 **Schedule II and III Controlled Substances; in violation of Title 21,**
3 **United States Code, Sections 846 and 841(a)(1).**
4     **DATED: February 11, 2009.**
5
6                                         Jason Dunham
                                          Special Agent
7                                         Immigration and Customs Enforcement
8
9 Sworn and subscribed to before me on February 11, 2009
10 _____
11 **U.S. Magistrate Judge**
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## AFFIDAVIT

Jason F Dunham, being duly sworn, states:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and have been so employed since about July 2004. I am currently assigned to the ICE Financial group and am primarily tasked with investigating financial crimes such as money laundering and bulk cash smuggling. I have received over 100 hours of advanced training in bulk cash smuggling and money laundering techniques, and I have conducted several investigations of such crimes. I have used many investigative techniques. For example, I have interviewed witnesses and informants. During the course of my experience, I have conducted searches and arrests. I have obtained financial records and information through a variety of methods including database checks and subpoenas, and I have analyzed such information for indicia of bulk cash smuggling and money laundering. I have also worked and consulted with numerous law enforcement officers experienced in drug trafficking, bulk cash smuggling and money laundering investigations. This training and experience forms the basis for any opinions expressed below.

2. This affidavit supports an application for a criminal complaint charging a conspiracy to distribute a controlled substance in violation of (Title 21, U.S.C. §§ 841 and 846).

3. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, subpoenaed and public records, database checks, searches and other investigation. Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact I know about this investigation. Rather, I set forth only those facts necessary to establish a foundation for the requested criminal complaint. Dates and times are, moreover, approximate.

/ / /

## PROBABLE CAUSE

### Introduction

1. The organization currently utilizes numerous Internet websites and e-mail addresses to facilitate the ongoing distribution of Scheduled pharmaceutical drugs. E-mail address *albert_1414@yahoo.com.mx* was identified from a search warrant on *www.MexRxOnline.com* as an e-mail address that at least one customer with a high volume of purchases was referred to for more personal service when ordering pharmaceuticals from *www.MexRxOnline.com*. Payments for Scheduled pharmaceuticals ordered through *albert_1414@yahoo.com.mx* were made to multiple individuals *via* Western Union. Additional payments for Scheduled pharmaceutical drugs were made to Bank Accounts held in the name of Carlos Samame-Rodea, the son of Carlos Samame-Preciat.

2. Subsequent postings on *www.drugbuyers.com* identified website *www.bestpharmarx.com* ("BestPharmaRx") as a website linked to *www.MexRxOnline.com*. Starting on September 6, 2006, search warrants were served on California Regional Internet ("CARI") for information related to BestPharmaRx and several additional websites hosted under the same account as BestPharmaRx. CARI has provided investigating agents information for the following websites:

    *www.albertpharma.com* ("Albertpharma"),

    *www.bestpharmarx.com* ("BestpharmaRx"),

    *www.feelfreedom.org* ("Feelfreedom"),

    *www.fillinghealthy.com* ("Fillinghealthy"),

    *www.silencehealth.com* ("Silencehealth").

    *www.fforg.us* ("fforg"),

    *www.secretproducts.net* ("SecretProducts"),

*www.heartline.us* ("Heartline").

3. Specifically, on or about September 6, 2006, February 15, 2008, July 18, 2008 and February 5, 2009, federal search warrants were issued in the Southern District of California for e-mail messages and other electronic information from CARI including information relating websites including *www.fforg.us*, *www.feelfreedom.org*, *www.silencehealth.com*, *www.albertpharma.com*, *www.fillinghealthy.com*, *www.heartline.us* and *www.secretproducts.net*. Specifically, the search warrant from September 6, 2006 indicated that at least 409 purchase orders totaling $175,727.00 in DEA Schedule II, IV Controlled Substances and prescription only pharmaceuticals were placed through websites *www.fillinghealthy.com*, *www.silencehealth.com* and *www.albertpharma.com*. The subsequent search warrants executed on February 15, 2008, July 18, 2008 and February 5, 2009 showed that the abovementioned sites as well as *www.fforg.us*, *www.feelfreedom.org*, *www.secretproducts.net* and *www.heartline.us* were continuing to fill purchase orders for individuals purchasing pharmaceuticals online.

4. Based on information provided by CARI, agents were able to determine the amount of scheduled pharmaceutical drugs shipped by the organization. Specifically, during the course of the alleged conspiracy, based upon actual e-mailed orders and actual e-mailed confirmations, agents determined *inter alia* that the organization filled orders for pharmaceuticals containing approximately 1569.2 grams of Oxycodone, approximately 80,880 units of Ritalin (Methylphenidate)), approximately 355.98 grams of Hydrocodone, Schedule II and III Controlled Substances. These figures represent only a small portion of what the organization actually sent to purchasers.

/ / /

/ / /

**Interview of Cooperating Witness**

5. On June 6, 2008, investigating agents interviewed a cooperating source ("CS") in Greensboro, NC. CS had previously been identified as the subject of a controlled delivery of the controlled substance Temgesic (Schedule III), ordered over the internet and sent from San Ysidro, California. CS stated that he/she ordered the Temgesic and approximately 20 other separate orders for Scheduled pharmaceuticals from *www.feelfreedom.org*. CS stated that he/she paid for his/her orders by sending money orders to a post office box in San Ysidro, California and typically received the order several days later. CS stated that during the approximately 20 orders placed on *www.feelfreedom.org* he/she was never asked for any medical information nor for a prescription. CS also stated that the scheduled pharmaceuticals received were sealed and, when used, provided the expected effects. CS stated that he/she believes all of the pharmaceuticals received were genuine and that he/she ordered from www.feelfreedom.org knowing that he/she was illegally purchasing controlled substances.

**Role of Angel Luevano-Ramirez (1),**

6. All of the above mentioned websites, aside from BestPharmaRx, are registered to Angel **LUEVANO** using the e-mail addresses *angelluevano@yahoo.com.mx* and *angelluevano1@yahoo.com.mx*. Website BestPharmaRx is no longer operating. However, an analysis of the subsequent e-mail messages reveal a basic distribution paradigm utilized by the organization. A client, for example, visits any of the aforementioned websites and using contact information provided on the website the client places an order for pharmaceutical drugs. After the order is placed the organization sends the client a confirmation e-mail message with instructions on how to send payment. Once payment is received the organization ships the pharmaceutical drugs to the client *via* a commercial mail carrier, providing the client with a tracking number for the package.

7. CARI indicated that payments for web-hosting services for the abovementioned websites were made through the PayPal payment system using the e-mail address *angelluevano@yahoo.com.mx*. Information received from Yahoo! indicates that e-mail address *angelluevano@yahoo.com.mx* is accessed primarily from IP address 72.199.45.173. Specifically, from August 8, 2008 through January 13, 2009, e-mail account *angelluevano@yahoo.com.mx* was accessed 245 times from IP address 72.199.45.173. Information received from Cox Communications, on February 5, 2009, indicates that IP address 72.199.45.173 was assigned to Angel Ramirez at 5228 Bay Crest Lane, San Diego, California during the times in which e-mail addresses *angelluevano@yahoo.com.mx* was accessed.

8. On February 10, 2009, Angel **LUEVANO** was arrested at his residence on 5228 Bay Crest Lane, San Diego, California. During a search of this residence agents located approximately thirty-five thousand dollars in cash, a large quantity of envelopes from purchasers of pharmaceutical drugs, and detailed ledgers documenting hundreds of sales consistent with the aforementioned paradigm. Moreover, during a post-Miranda interview, **LUEVANO** admitted *inter alia* 1) to registering and maintaining the aforementioned CARI websites, 2) to having cashed checks from purchasers, 3) to receiving approximately $15,000.00 dollars a month from the organization as compensation for his services.

**Role of Rosario Astorga-Espinoza (2),**

9. During the course of the investigation, information provided by CARI revealed that the organization, on several occasions, instructed purchasers to send payment to addresses in the name of "Rosario Astorga-Espinoza." On February 10, 2009, Rosario **ASTORGA-ESPINOZA** was arrested at the San Ysidro Port of Entry as the sole occupant and driver of a vehicle seeking entry into the United States. This vehicle contained approximately 35 individually bagged packages of

various scheduled pharmaceutical drugs. Each bag contained a piece of paper with an order number, shipping instructions and the purchaser's address. This piece of paper, which accompanied each individual bag of scheduled pharmaceuticals, is consistent with how scheduled pharmaceutical drugs were shipped by this organization *via* the aforementioned paradigm These Scheduled pharmaceutical drugs were hidden in various secret locations throughout the vehicle. During a post-<u>Miranda</u> interview Rosario **ASTORGA-ESPINOZA** admitted 1) to knowledge of the pharmaceuticals, 2) knowing that it was illegal to import them into the United States, 3) that he was importing the drugs on behalf of Jorge Samame Rodea, and 4) that he was going to package each bag of pharmaceuticals in an outer envelope and mail them as instructed by the piece of paper contained in each bag.

### Role of Jose Astorga-Espinoza (3),

10. During the course of the investigation, information provided by CARI revealed that the organization, on several occasions, instructed purchasers to send payment to addresses in the name of "Jose Astorga-Espinoza." Moreover, CARI also revealed information that purchasers were also instructed to send Western Union money transfers to "Jose Astorga-Espinoza." On February 10, 2009, Jose **ASTORGA-ESPINOZA** was arrested at the San Ysidro Port of Entry while seeking admission into the United States *via* the pedestrian lanes. During a post-<u>Miranda</u> interview Jose **ASTORGA-ESPINOZA** admitted 1) that he [Jose **ASTORGA-ESPINOZA**] was crossing to meet with his brother, Rosario **ASTORGA-ESPINOZA**, in order to assist in the packaging of pharmaceutical drugs that his brother would import that day, 2) that he [Jose **ASTORGA-ESPINOZA**] was going to a particular post office box to retrieve envelopes containing monetary instruments from purchaser's of pharmaceutical drugs, 3) that he [Jose **ASTORGA-ESPINOZA**] had retrieved Western Union money transfers for the organization on several prior occasions, and 4) that he [Jose **ASTORGA-ESPINOZA**] worked for

"Christopher" or "Christian" on behalf of "Jorge."

11.     WHEREFORE, I request that the court issue a criminal complaint for the ANGEL LUEVANO (1), ROSARIO ASTORGA-ESPINOZA (2), JOSE ASTORGA-ESPINOZA (3).


JASON DUNHAM
Special Agent
U.S. Immigration & Customs Enforcement


Subscribed and sworn to me before
this ____ day of February, 2009

HON. RUBEN B. BROOKS
United States Magistrate Judge